IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID L. GILLILAND, SOUTHEASTERN IMAGING GROUP, LLC,** | )<br>)<br>) 2:05-cv-01059 |
| **Plaintiffs,** | ) |
| v. | ) |
| **ANTHONY J. GERAMITA, JONATHAN K. HERGERT,** | )<br>)<br>) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court for consideration and disposition is plaintiffs' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS AGAINST DEFENDANT HERGERT (*Document No. 34*). Defendant Hergert has filed a Brief in Opposition to the motion to compel (*Document No. 36*), and both sides have filed supplemental briefs *(Document Nos. 44, 45)*. The issue is a novel question regarding the application of the attorney-client privilege for a corporation that has ceased operations. After considering the filings of the parties and the relevant legal authorities, the Motion to Compel will be granted.

Factual Background

The underlying lawsuit asserts violations of Pennsylvania securities law and common law based on statements and omissions that allegedly caused plaintiffs to purchase $1.3 million of worthless stock. Defendant Hergert and his firm, Eckert Seamans Cherin & Mellott, LLC ("ESCM"), formerly served as legal counsel for Main Medical Holdings, LLC, Mid Atlantic Imaging, Inc., and Main Medical Ventures (collectively, the "Main Medical Companies"). The

Main Medical Companies were also named as defendants in this lawsuit, but those companies have ceased operations and a default judgment was entered against them. The Main Medical Companies, while insolvent and for all practical purposes out of business, have never been dissolved and are legal entities presently in existence. In addition to serving as legal counsel, Hergert also provided business advice while serving as one of three managers of Main Medical Holdings, LLC and as a board member of the other two Main Medical Companies. *See* Hergert Deposition at 43. At issue here are thirty-three documents listed on the privilege log provided by Defendant as being withheld from production due to the attorney-client privilege and work product doctrine. The documents consist primarily of email correspondence between Hergert and officers of the Main Medical Companies, but also include attorney notes, time records and billing statements. The attorney work-product doctrine does not apply because the documents at issue were not prepared in anticipation of litigation. Hergert Deposition at 117-119. Hergert has agreed to produce his time records and billing invoices, so those are no longer at issue. Defendant Hergert and ESCM are not asserting a personal privilege and have no reason to withhold the documents at issue. *See* Opposition Brief at 2 n.1.

      The former chief executive officer of the Main Medical Companies, Anthony Geramita, died since the filing of this lawsuit. Although Geramita is named as a defendant in this lawsuit, his estate may be substituted as a party defendant. To date, the Estate has not participated in this litigation. The two surviving members (i.e., owners) of Main Medical Holdings, LLC, Georgine DeMarino and Karen Bray, have indicated that to the extent of their authority, each will waive the attorney-client privilege. Defendant asserts that DeMarino resigned as a director of the Main Medical entities in March 2005 and had no management responsibilities thereafter, and that Bray

was a minor investor who never had any management responsibilities.  Hergert feels obligated under the Rules of Professional Conduct to assert the privilege on behalf of the Main Medical Companies.[1]

Legal Analysis

The parties have acknowledged that there is very little precedent regarding the attorney-client privilege of non-operating, defunct corporations.  There are several fundamental questions that must be answered: (1) does state or federal law apply? (2) who can assert or waive the privilege?  (3) who has the burden of production and persuasion?  (4) is the corporation's former counsel ethically required to assert and defend the claim of privilege?

The general principles governing the attorney-client privilege are straight-forward.  The attorney-client privilege represents a policy judgment that in some circumstances, encouraging a client to fully disclose information to legal counsel is more important than providing the decision-maker with all relevant facts.  "Nevertheless, because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'"  *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979) (citations omitted) (adopting the "control-group" test as affording the bare minimum of protection).

The attorney-client privilege clearly extends to corporations, although application of the

---

[1] Defendant Hergert points out that DeMarino and Bray are hardly disinterested because they have hired plaintiff's counsel to pursue separate lawsuits against Hergert for losses they incurred by reason of their investments in the Main Medical Companies.  Hergert, as a named defendant in this case, has an equally obvious personal interest in preventing disclosure of Main Medical Company documents.

doctrine is more difficult. Unlike an individual, a corporation does not speak with one voice and its physical and legal lives may be different. *See generally* John William Gergacz, Attorney-Corporate Client Privilege § 2.06 (3d ed. 2006). A business may continue on even though the documented corporate structure may change via merger, acquisition or reorganization. On the other hand, as this case illustrates, a business may cease and terminate for all practical purposes even though the corporate form remains in place. As a general rule, the Court believes that decisions about the attorney-client privilege should be based primarily on the practical realities of the business rather than technical legal status.

    1.    Governing Law

This Court's jurisdiction is based on diversity of citizenship. Federal Rule of Evidence 501 states, in relevant part, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State law." The plaintiffs allege breaches of Pennsylvania's securities laws and common law. All of the defendants are Pennsylvania citizens, with the exception of Main Medical Holding, LLC (a Delaware corporation). Attorney Hergert's law practice is based in Pennsylvania, the Main Medical Companies were located in Pennsylvania and it appears from the facts of record that the parties' expectations would have been based on Pennsylvania's rules governing the attorney-client privilege. Accordingly, this Court will apply Pennsylvania law to the extent possible.[2]

---

[2]Given the paucity of precedent on this issue, the parties have not pointed to any differences between Pennsylvania, Delaware and federal common law, nor has the Court discovered any such differences.

 2. <u>Who May Assert and/or Waive the Privilege</u>?

In an operating corporation, the attorney-client privilege is controlled by the corporation's current management. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-52 (1985). In *Weintraub,* the Supreme Court concluded that a bankruptcy trustee, rather than former officers and directors, controlled the privilege. It is also clear that a former manager cannot assert an attorney-client privilege on behalf of a corporation as a shield to protect his/her self-interest. *Id.* at 353-54 (noting the difficulties in investigating the conduct of former management if former management controlled the attorney-client privilege). Pennsylvania has followed the *Weintraub* analysis. In *Maleski v. Corporate Life Ins. Co.*, 641 A.2d 1 (Pa. Commw. 1994), the Court explained that authority to act on behalf of a corporation belongs to the directors and officers and passes with the succession of management, such that displaced managers cannot assert the attorney-client privilege.

In this case, the chief executive officer of the Main Medical Companies is deceased, all other officers and directors have apparently resigned, and there is no officer, director or manager in charge. Brief in Opposition at 3. The Court has no information regarding the status of the Estate. Defendant Hergert had an operational role in the entities, as well as serving as legal counsel, but those roles have also ended. Moreover, Hergert and the Geramita Estate have a conflict of interest as co-defendants seeking to assert the privilege as a shield. *See Weintraub.* The two surviving owners of the Main Medical Companies, Bray and DeMarino, had limited operational involvement. In sum, as Defendant points out, "we are aware of no person who can

take action on behalf of any of the three entities." Brief in Opposition at 3. There is simply no person that is in a role analogous to current corporate management, under the principles outlined in *Weintraub* and *Maleski*. Although the Main Medical Companies technically still have a legal existence, there is no current management personnel who can now assert the attorney-client privilege on behalf of the corporation.

A similar analysis applies to whether any person has the ability to waive the privilege in this case. Only an authorized representative of the corporation may waive the privilege. *Maleski*, 641 A.2d at 41 (citing *Weintraub*); *see also* Attorney-Client Privilege in Civil Litigation 17 (Vincent S. Walkowiak, ed., American Bar Association) (3d ed. 2004). For the reasons set forth above, the Court concludes that Bray and DeMarino are unable to waive the privilege, as neither person is authorized to act on behalf of the Main Medical Companies.

### 3. Who Has the Burden?

In light of the Court's analysis above, that no person presently has the ability to either assert or waive the attorney-client privilege, the question of burden becomes dispositive. The Court concludes that the burden should be on the person seeking to invoke the privilege. As the starting point of the analysis: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...." Fed. R. Civ. P. 26(b); Pa. R.C.P. 4003.1 (same). Generally, a party resisting discovery bears the burden of persuasion to show that the discovery is impermissible. *McCrink v. Peoples Benefit Life Ins. Co.*, 2004 WL 2743420 (E.D. Pa. Nov. 29, 2004). The same rule applies in the specific context of the attorney-client privilege. *See Monah v. Western Pennsylvania Hospital*, 44 Pa. D&C3d 513 (Ct. Common Pleas 1987)

(Wettick, J.) (refusing to extend attorney-client privilege to witness statement by employee as incompatible with Pennsylvania's broad discovery policy).

In *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 31 (Pa. Commw. 2001), the Court held that a party asserting the privilege has the initial burden to prove that it has been properly invoked. *Accord Joyner v. Southeastern Pennsylvania Transportation Authority*, 736 A.2d 35 (Pa. Commw. 1999) (rejecting argument that a party had a burden to show that the privilege did not exist). Similarly, in *In re Grand Jury Investigation*, 599 F.2d at 1233, the Third Circuit adopted as one of the elements that "the privilege has been (a) claimed and (b) not waived by the client."

In this case, therefore, the documents at issue must be produced. The parties apparently agree that the documents are responsive to a valid discovery request and would be discoverable but for the attorney-client privilege. Defendant cannot meet its burden to prove that the privilege has been validly asserted because there is no person with authority to properly invoke the privilege. Thus, the burden never shifts to plaintiffs to demonstrate that the privilege either does not exist or has been effectively waived.

    4.    <u>Ethical and Practical Considerations</u>

Defendant Hergert argues that he feels ethically compelled and/or professionally obligated to assert the privilege on behalf of the Main Medical Companies unless and until there is an authorized waiver. The Court recognizes the uncertainty that has existed in this area and appreciates counsel's desire to err on the side of caution. As set forth above, however, the Court concludes that counsel has no duty to assert the attorney-client privilege on behalf of a non-

operating/defunct corporation, and indeed, counsel lacks the ability to do so.

The better rule, in the Court's view, is that there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause. *See, e.g.* Attorney-Corporate Client Privilege § 2.08 (proposing similar presumption); *Accord Lewis v. United States*, 2004 WL 3203121 (W.D. Tenn. Dec. 7, 2004) (attorney-client privilege does not extend beyond the death of a corporation); *In re JMP Newcor Int'l, Inc.*, 204 B.R. 963 (N.D. Ill. Bankr. 1997) (attorney-client privilege of bankrupt entity ceased to exist upon confirmation of a reorganization plan); *but see Randy Int'l, Ltd. v. Automatic Compactor Corp.*, 412 N.Y.S.2d 995 (N.Y. Civ. Ct. 1979) (ceasing of operations does not preclude invocation of privilege). This rule is consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain. *Compare Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998) (noting reasons that attorney-client privilege survives death of an individual). The possibility that a corporation's management will hesitate to confide in legal counsel out of concern that such communication may become unprivileged after the corporation's demise is too remote and hypothetical to outweigh the countervailing policy considerations supporting discoverability. *See* Attorney-Corporate Client Privilege § 2.08. Accordingly, counsel has no duty to assert the privilege on behalf of a non-functioning corporation. Instead, the duty of counsel to assert the privilege would be triggered only when a person with authority to act on behalf of the corporation instructs counsel to assert the privilege.

An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID L. GILLILAND, SOUTHEASTERN IMAGING GROUP, LLC, <br><br> Plaintiffs, <br> v. <br> ANTHONY J. GERAMITA, JONATHAN K. HERGERT, <br><br> Defendants. | ) ) ) ) 2:05-cv-01059 ) ) ) ) ) ) ) |

AND NOW, this 14th day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that plaintiff's MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS AGAINST DEFENDANT HERGERT (*Document No. 34*) is **GRANTED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: David J. Berardinelli, Esquire
Email: berardinelli@dkyk.com
Gary L. Kaplan, Esquire
Email: kaplan@dkyk.com

Benjamin D Kerr, Esquire
Email: bdk@muslaw.com

William B. Mallin, Esquire
Email: wmallin@eckertseamans.com
John R. Kenrick, Esquire
Email: jkenrick@eckertseamans.com