IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID L. GILLILAND, SOUTHEASTERN )
IMAGING GROUP, LLC, )
) 2:05-cv-01059
        Plaintiffs, )
  v. )
)
JONATHAN K. HERGERT, )
)
        Defendant. )

## MEMORANDUM ORDER

Before the Court for consideration and disposition are the MOTION FOR SUMMARY JUDGMENT *(Document No. 84)* filed by Defendant, the MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERT WITNESS *(Document No. 89)*, and the MOTION FOR PARTIAL SUMMARY JUDGMENT *(Document No. 90)* filed by Plaintiffs. The issues have been thoroughly briefed and are ripe for disposition.

Factual and Procedural Background

In May 2005, Main Medical Holdings, LLC, Mid Atlantic Imaging, Inc., and Main Medical Ventures (collectively, the "Main Medical Companies") abruptly ceased operations, thus spawning several legal actions. In the instant case, Plaintiffs assert violations of Pennsylvania securities law and common law based on statements and omissions which allegedly induced Plaintiffs to purchase worthless stock in the Main Medical Companies. Gilliland entered into a promissory note and security agreement dated August 16, 2004 (the "August 16 Note") with Anthony Geramita, by which Geramita obtained $550,000. On December 17, 2004 Southeastern Imaging Group, LLC ("Southeastern") entered into an equipment loan promissory note (the

"December 17 Note") with Main Medical Holding, LLC ("Main Holding"), by which Main Holding obtained $810,000. The parties advance starkly different versions of the facts and object to many of the allegedly "undisputed" facts asserted by their adversary. Anthony Geramita, the founder and chief executive officer of the Main Medical Companies, is now deceased and was not deposed, which has contributed to the unsettled factual record.

Defendant Hergert and the law firm for which he worked, Eckert Seamans Cherin & Mellott, LLC ("ESCM"), acted as legal counsel for the Main Medical Companies. Hergert also served as a manager and/or director of the Main Medical Companies and as Assistant Secretary for Main Holdings. On December 29, 2006, the Court granted Plaintiffs' motion to voluntarily dismiss claims against Geramita without prejudice. Thus, Hergert is the sole remaining defendant.

Motions for Summary Judgment

The Second Amended Complaint asserts six claims on behalf of Gilliland and Southeastern: Counts I and IV assert violations of the Pennsylvania Securities Act, 70 P.S. §§ 1-401, 1-501 and 1-503 in connection with the August 16 Note and December 17 Note, respectively; Counts II and V assert claims for Negligent Misrepresentation; Counts III and VI assert claims for Unlawful Concerted Action. The Court will address each legal theory seriatim.

Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

A. Pennsylvania Securities Act (Counts I and IV)

1. "Direct" Liability Pursuant to Sections 1-401 and 1-501

The Pennsylvania Securities Act, 70 P.S. § 1-401 provides:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:
> (a) To employ any device, scheme or artifice to defraud;
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Section 1-501 makes actionable and sets forth the civil penalties for a violation of section 1-401.

Section 1-401 of the Pennsylvania Securities Act is modeled after Rule 10b-5 of the federal

securities laws, and requires virtually the same elements of proof. *Sunquest Information Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 659 (W.D. Pa.1999). Therefore, the elements of this cause of action are: (1) that defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the cause of their injury. *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 871 (3d Cir. 2000).

Plaintiffs argue that Hergert exceeded the customary role of legal counsel such that he is liable under the statute. Defendant contends that the August 16 Note and the December 17 Note were not "securities." Defendant further contends that he was not a "seller" of securities.[1] The Court will address each contention seriatim.

### a. Definition of "Security"

The Pennsylvania Securities Act explicitly defines the term "security." Section 1-101(t) states (emphasis added):

> (t) "Security" means any **note**; stock; treasury stock; bond; debenture; evidence of indebtedness; share of beneficial interest in a business trust; certificate of interest or participation in any profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; limited partnership interest; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; **membership interest in a limited liability company of any class or series, including any fractional or other interest in such interest unless excluded by clause (v)**; or, in general, any interest or instrument commonly known as or having the incidents of a "security"; or any certificate of interest or participation in, temporary or interim

---

[1] Defendant also contends that there are genuine issues of material fact with respect to the elements of whether Hergert made material mistatements or omissions, with scienter, and whether Plaintiffs justifiably relied on the alleged misrepresentations. Because the Court concludes that summary judgment is not appropriate for either party on the Pennsylvania Securities Act claims, these issues will also be presented to the jury.

> certificate for, receipt for, guarantee of, **or warrant or right to subscribe to or purchase, any of the foregoing.** All of the foregoing are securities whether or not evidenced by written document. "Security" does not include:
>
> (i) Any beneficial interest in any voluntary inter vivos trust which is not created for the purpose of carrying on any business; or
>
> (ii) Any beneficial interest in any testamentary trust; or
>
> (iii) Any insurance or endowment policy or annuity contract under which an insurance company admitted in this State promises to pay a sum of money (whether or not based upon the investment performance of a segregated fund) either in a lump sum or periodically for life or some other specified period; or
>
> (iv) Any certificate issued under section 809 of The Insurance Company Law of 1921, act of May 17, 1921 (P.L.682), [FN14] as amended; or
>
> (v) A **membership interest in a limited liability company** where **all** of the following conditions are satisfied:
>
> (A) The membership interest is in a company that is not managed by managers;
>
> (B) The purchaser of the membership interest enters into a written commitment to be engaged actively and directly in the management of the company; **and**
>
> (C) The purchaser of the membership interest, in fact, does participate actively and directly in the management of the company.

Thus, as relevant to this case, the definition of "Security" includes warrants, or options, to purchase.

The August 16 Note contains an option to purchase Class B units of membership interest in Main Holdings, a Delaware limited liability company. Specifically, "[a]t the option of the Payee, . . . the Payee may convert, effective as of the Maturity Date, all or a portion of the Total Sum into Acquired Units (as hereinafter defined) at the rate of ten (10) Acquired Units for each three thousand dollars ($3,000) of the Total Sum (the "Conversion Rate"), subject to adjustment as provided in Paragraph 5 hereof." Paragraph 5 of the Note illustrates the parties' expectation

5

that the securities laws would apply by providing that Gilliland would receive all notices "given by the Company to its security holders in their capacity as holders of securities of the Company." Defendant argues that because the August 16 Note was structured such that Gilliland had the option to acquire Class B units from Geramita, rather than directly from Main Holdings, it is not a "security." The Court cannot agree. Nothing in the statutory text supports this construction and Hergert does not cite any authority for his proposition. The August 16 Note provided Gilliland with an option to obtain a "membership interest" in Main Medical Holdings, LLC. Thus, as a matter of law, the August 16 Note is a "Security."

The December 17 Note does not contain any such explicit language. On its face, it appears to be an ordinary loan secured by equipment. The text of Section 101(t), on its face, defines the term "security" to include "any note." However, Hergert contends that the December 17 Note falls into a judicially-created exception for a "short-term note secured by a lien on a small business or some of its assets." *Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990) (noting that the presumption that a "note" is a security can be rebutted); *Accord Bass v. Janney Montgomery Scott, LLC,* 210 F.3d 577, 584-586 (6th Cir. 2000). *Reves* set forth a four-factor test to determine whether a "note" bears a "family resemblance" to a "security": (1) the motivations of the parties; (2) the plan of distribution of the instrument; (3) the expectations of the investing public; and (4) whether some other regulatory scheme renders the Securities Act unnecessary.

Plaintiffs contend that the December 17 Note was far from a routine loan, but rather, was the first step in an equity investment that satisfies the *Reves* test as a matter of law. Defendant argues that the December 17 Note is not a security, even though subsequent term sheets might meet the definition. The evidentiary record is not clear enough to decide this issue as a matter of

6

law. The statute is written in broad terms and, on its face, does not even require a "security" to be "evidenced by written document." Thus, the Court concludes that summary judgment is not appropriate for either party and a jury will have to determine whether the December 17 Note was a "security."

                b.       Definition of "Seller"

As an alternative basis for summary judgment, Hergert contends that he was not a "seller." Plaintiffs contend that the record demonstrates, as a matter of law, that Defendant's conduct makes him a "seller." The parties agree that the relevant test is set forth in *Pinter v. Dahl*, 486 U.S. 622, 647 (1988) ("liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner"). In rejecting a "substantial participation" test, the *Pinter* Court noted that it "might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services" to liability. *Id.* at 651. On the other hand, it is clear that a lawyer may be held liable by an investor for his/her involvement in a securities deal as a violator of the Pennsylvania Securities Act. *Brennan v. Reed Smith Shaw & McClay*, 450 A.2d 740, 747 (Pa. Super. 1982). Determination of a person's status as a "seller" is a question of fact. *Degulis v. LXR Biotechnology, Inc.*, 1997 WL 20832 *6 (S.D.N.Y. 1997).

Defendant contends that he did not solicit the Notes from Gilliland and did not even know his identity. The mere fact that Gilliland requested anonymity would not immunize Hergert from liability. *See, e.g. Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 645-47 (Pa. Super. 1990), *aff'd without opinion*, 605 A.2d 798

(1992) (Securities Act focuses on buyer-seller relationship rather than strict technical privity such that intended beneficiary can assert claim). Defendant contends that he was a "mere scrivener," or at most, was performing professional services. Plaintiffs contend that Hergert went well beyond the line by engaging in active solicitation in order to ensure that his law firm's legal bill would be paid. In support, Plaintiffs have submitted an expert report and affidavit from Douglas Branson. Defendant has submitted a counter-expert report. In sum, the issue of whether Hergert was a "seller" is, again, too fact-specific to be resolved as a matter of law at the summary judgment stage.

2.  "Indirect" Liability Pursuant to Section 1-503

The Pennsylvania Securities Act, 70 P.S. § 1-503(a) provides an action for joint and several liability, contribution and indemnification as to persons other than the primarily culpable party, as follows (emphasis added):

> (a) Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employe of such person who materially aids in the act or transaction constituting the violation, **and every broker-dealer or agent who materially aids in the act or transaction constituting the violation**, **are also liable** jointly and severally with and **to the same extent as such person**, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Plaintiffs contend that Section 1-503 is an alternative basis for Hergert to be held liable, even if he is found not to be a "seller" and thus not liable under Sections 1-401 and 1-501. Defendant argues that Section 1-503 does not apply because there has been no adjudication of primary liability against another person under Section 1-501. Defendant points to the fact that upon

Geramita's death, Plaintiffs declined to substitute his estate as a party in this action. Defendant also contends that Section 1-503 does not support an action by the victim for "aider and abettor liability."

The Court concludes that Section 1-503 provides a cognizable cause of action for Plaintiffs. The analysis in *Fox Intern. Relations v. Fiserv Securities, Inc.*, 490 F.Supp.2d 590, 605 (E.D. Pa. 2007), is persuasive: "Under *[McCarter v. Mitcham,* 883 F.2d 196, 204 (3d Cir.1989)] and the plain text of Section 1-503, the Court concludes that the better interpretation of Section 1-503 is that the statute creates a cause of action against a defendant who "materially aids" in a securities law violation, with or without a prior showing of liability by the plaintiff." *Contra Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 609-10 (3d Cir. 1980), *rev'd on other grounds, In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537 (3d Cir. 1988) (sole source of civil liability for violations of §§ 1-401, 1-403 and 1-404 is § 1-501). As the *Fox* Court explained, this limited interpretation developed prior to the Pennsylvania Superior Court's decision in *Brennan*, 450 A.2d at 747, which recognized that a law firm could be liable to an investor under Section 1-503. *See also McCarter*, 883 F.2d at 203-04; *But see Gruber v. Price Waterhouse,* 911 F.2d 960, 967 (3d Cir.1990*)* (observing that *Brennan's* discussion of § 1-503 was dicta). Moreover, the discussion in *Biggans* and *Gruber* occurred in the context of finding the analogous statute of limitations for a violation of the *federal* securities act, and was not an interpretation of the Pennsylvania Securities Act itself. In addition, as Plaintiffs point out, interpreting the statute as providing only for contribution and indemnity actions would render the references to joint and several liability superfluous. Thus, although Third Circuit precedent is

not entirely clear,[2] the Court concludes that a victim of securities fraud may bring an action against anyone who materially aided the violation and that Section 1-503 is not limited strictly to actions between co-defendants.

Moreover, there is no textual support for Defendant's proposition that a victim of securities fraud must go through the motions of obtaining a judgment against a directly liable party prior to seeking joint and several liability under Section 1-503. As the facts of this case illustrate, due to Geramita's death and the apparent insolvency of his estate, such a requirement would only result in fruitless and wasteful litigation. Thus, the Court respectfully disagrees with the statement in *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp.2d 400, 410 (W.D. Pa. 2002), that a determination of primary liability is a "precondition" to suit under Section 1-503.[3] While Hergert is liable only "to the same extent" as Geramita, that liability can be determined during the context of this litigation. As a practical matter, the extent of both Hergert's and Geramita's alleged liability, if any, is likely to be simply the amount of the funds invested by Plaintiffs.

Pursuant to the plain text of the statute, there is no requirement that Hergert be a "seller" to face liability under Section 1-503. It is sufficient for the factfinder to conclude that he was a

---

[2]District court opinions are also split on this issue. *Compare Fox; Jairett v. Montauk Sec. Corp.*, 153 F. Supp.2d 562, 578 (E.D. Pa. 2001); *Carroll v. John Hancock Distrib., Inc.*, 1994 WL 87160 *5 (E.D. Pa. 1994); *Northrop v. Lease Financing Corp.*, 1989 WL 104805 *3 (E.D. Pa. 1989); *Bull v. American Bank and Trust Co. of Pa.*, 641 F. Supp. 62, 66 n.5 (E.D. Pa. 1986) *with Daniel Boone; In re Phar-Mor, Inc. Sec. Litig.,* 892 F.Supp. 676, 688 (W.D.Pa.1995)*; Schor v. Hope,* 1992 WL 22189, *4 (E.D.Pa. Feb.4, 1992)*; Penturelli v. Spector, Cohen, Gadon & Rosen,* 640 F.Supp. 868, 872 (E.D.Pa.1986)*.

[3]The Court does not reach Plaintiffs' alternative argument that they have fulfilled this precondition by taking default judgments against the Main Medical entities.

"broker-dealer or agent who materially aid[ed] in the act or transaction constituting the violation." For the reasons set forth above, this is a genuine issue of material fact and the Court is unable to resolve it on the existing record as a matter of law at the summary judgment stage. In addition, Hergert must have the opportunity to establish that he did not know and reasonably could not have known of the facts for which liability is alleged to exist.

In summary, both parties' motions for summary judgment on the Pennsylvania Securities Act claims must be denied. There are genuine and material issues of fact that must be resolved to determine liability under Sections 1-401, 1-501 and 1-503.

### B. Negligent Misrepresentation (Counts II and V)

The parties agree that the elements of this cause of action are set forth in *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999):

> Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *See, e.g., Gibbs*, 538 Pa. at 210, 647 A.2d at 890, citing, Restatement (Second) Torts § 552. The elements of negligent misrepresentation differ from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words. *Id.* Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another.

Section 552 of the Restatement refers to "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information...."

Defendant argues that he did not owe a duty to Plaintiffs and that he did not have a

11

pecuniary interest in the transactions. Hergert contends that he was acting as an attorney to represent only the interests of his client and was not in privity with Plaintiffs. He argues further that Plaintiffs did not rely on any misrepresentation as to the December 17 Note. None of these arguments merits the entry of summary judgment. As noted above, Plaintiffs contend that Hergert went far beyond the role of "mere scrivener" and acted as a self-interested solicitor of the Notes. Apparently, Hergert also performed a dual role as attorney and as a manager/director of the Main Medical Companies. The Court cannot conclude as a matter of law that Hergert owed no duty to Plaintiffs. The substantial legal bill outstanding to Hergert's law firm constituted a sufficient, if not significant, "pecuniary interest." *See* Restatement § 552 Commentary (contrasting "pecuniary interest" with information given "purely gratuitously"). The jury will have to determine whether the remainder of the elements of this tort can be proven, based on the evidence presented at trial. Accordingly, Defendant's motion for summary judgment as to Counts II and V is DENIED.

    C.    Unlawful Concerted Action (Counts III and VI)

In *Koken v. Steinberg*, 825 A.2d 723, 731 (Pa. Commw. 2003), the Pennsylvania Commonwealth Court clearly recognized the tort of Unlawful Concerted Action:

> Section 876 of the Restatement (Second) of Torts, Persons Acting In Concert, provides that one is subject to liability for harm to a third person arising from the tortious conduct of another if he a) does a tortious act in concert with the other or pursuant to a common design with him; b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person. . . . Our Supreme Court addressed Section 876 in *Skipworth by Williams v. Lead Industries Association, Inc.*, 547 Pa.

> 224, 690 A.2d 169 (1997), and this Court is convinced by this language in *Skipworth* that Section 876 is a viable cause of action in Pennsylvania.

*Accord Reis v. Barley, Snyder, Senft & Cohen, LLC*, 484 F. Supp.2d 337, 343-44 (E.D. Pa. 2007); *Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, Inc.*, 2007 WL 1118322 *11 (E.D. Pa. 2007); *but see In re Student Finance Corp.*, 335 B.R. 539, 551 (D. Del. Bankr. 2005) (discussing equivocal statements by Pennsylvania Superior Court and dismissing Section 876 claim). To the extent necessary, this Court predicts that the Pennsylvania Supreme Court would recognize a cause of action based on Section 876 of the Restatement. The Court of Appeals for the Third Circuit set forth the elements required to prove a tort claim based on Section 876 in *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 127 (3d Cir. 1999), as follows:

> Based on Restatement § 876(b), courts have determined that the tort of aiding and abetting involves three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983); *see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1495 (8th Cir.1997); *Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir.1985).

In a footnote, the Court further explained that there are six factors to determine whether a defendant provided "substantial assistance": the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other, his state of mind, and the duration of the assistance provided. The *Hurley* Court held that the district court's jury instructions were erroneous for (1) not allowing for liability based on inaction, and (2) for not emphasizing that the defendant must provide **substantial** assistance. *Id.* at 128.

13

Plaintiffs contend that Hergert is liable under all three categories described in Section 876(a)-(c). Hergert argues that he owes no duty to Plaintiffs. For the reasons set forth above, this genuine issue of material fact cannot be resolved as a matter of law at the summary judgment stage on the existing evidentiary record.

In summary, the MOTION FOR SUMMARY JUDGMENT *(Document No. 84)* filed by Defendant and the MOTION FOR PARTIAL SUMMARY JUDGMENT *(Document No. 90)* filed by Plaintiffs must be DENIED.

Motion in Limine Regarding Expert Testimony

Plaintiffs seek to exclude the testimony of H. Arnold Gefsky, Esquire, an experienced transactional lawyer who was engaged by Hergert to serve as an expert witness. The admissibility of testimony by experts is governed by Fed. R. Evid. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As an initial matter, Plaintiffs challenge the opinions expressed in Gefsky's Report regarding the thoughts, motives, credibility, and knowledge possessed by the participants in the underlying transactions. Defendant concedes that "Plaintiffs are generally correct that such testimony is improper." Memorandum of Law in Opposition to Motion in Limine at 5. Defendant further explains that "Gefsky's statements are merely observations...." In Gefsky's deposition, he explained that the first part of his expert report was trying to lay out the facts, "So

the opinion part comes in the Analysis" section of his Expert Report. It would not assist the trier of fact (indeed, it would invade the province of the jury) for Gefsky to testify about what he thinks are the facts of the case. Accordingly, the Motion in Limine will be granted as to the information contained in the Factual Background section of Gefsky's Report and any testimony regarding the thoughts, motives, credibility, and knowledge possessed by the participants in the underlying transactions.

Plaintiffs also challenge whether Gefsky's proposed testimony satisfies Rule 702 standards for admissibility. Plaintiffs describe the Report as the "equivalent of a closing argument" and contend that it is not based on proper methodology. In *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp.2d 461 (S.D.N.Y. 2005), the Court excluded similar expert testimony in a case involving a promissory note transaction. Defendant contends that Plaintiffs do not challenge the foundation of Gefsky's opinions, but merely disagree with the accuracy of those opinions and his "semantics and phrasing." Hergert argues that the appropriate remedy is that Gefsky should be subjected to vigorous cross-examination at trial.

The Court has reviewed Gefsky's expert report in detail. Pursuant to Rule 702, the majority of Gefsky's proposed testimony is inadmissible because it does not contain "scientific, technical, or other specialized knowledge [which] will assist the trier of fact." It is the jury's function, not that of an expert witness, to review the factual record and determine what actually happened. It is the Court's function, not that of an expert witness, to make legal conclusions, such as whether the Notes at issue were "securities." Thus, Gefsky's attempt to opine as to whether the "essential elements of the Pennsylvania Securities Act and Pennsylvania common law claims brought against Hergert" were met, *see* Gefsky Report at 19, is not admissible.

However, Gefsky's proposed testimony will not be totally excluded. Plaintiffs acknowledge that attorneys, like other professionals, are permitted to explain ordinary practices in their field based on their own experience and professional standards. Gefsky's experience as a practitioner in the private equity transactions area may be useful to help the jurors understand the alternatives available for private financing and the typical industry practices related thereto. Gefsky may also opine as to the expectations and practices of experienced legal practitioners in this area regarding interactions with their client and other parties.

To lend further guidance to the parties, only the opinions contained in the following portions of the Gefsky Report shall be admissible:

1. Page 13 and 1st full paragraph on Page 14: the options for equity financing, steps involved in a private placement, the judgments involved in determining what to include in offering materials, the use of "discussion drafts," and the types of negotiations that may typically occur with strategic investors;

2. Page 15 (top): industry practices regarding disclosure of "track record" information, the existence of a stock bonus payable to a corporate officer for closing a deal, and the pricing terms in the initial proposal; and

3. Page 16 (top): the considerations involved for corporate attorneys serving as directors or managers of entities who are their clients, and as assistant secretaries to facilitate ministerial functions.

In all other respects, the MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERT WITNESS *(Document No. 89)* is GRANTED.

In accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR SUMMARY JUDGMENT *(Document No. 84)* filed by Defendant is **DENIED**, the MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERT WITNESS *(Document No. 89)* is **GRANTED IN PART AND DENIED IN PART**, and the MOTION FOR PARTIAL SUMMARY JUDGMENT *(Document No. 90)* filed by Plaintiffs is **DENIED**.

Plaintiffs shall file their pretrial statement on or before December 6, 2007.

Defendant shall file his pretrial statement on or before December 27, 2007.

A Pretrial Conference will be held on January 4, 2008 at 2:30 p.m.

SO ORDERED this 15th day of November, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: David J. Berardinelli, Esquire
Email: berardinelli@dkyk.com
Gary L. Kaplan, Esquire
Email: kaplan@dkyk.com

William B. Mallin, Esquire
Email: wmallin@eckertseamans.com
John R. Kenrick, Esquire
Email: jkenrick@eckertseamans.com