**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID L. GILLILAND, SOUTHEASTERN IMAGING GROUP, LLC,** | ) |
| | ) |
| | ) **2:05-cv-01059** |
| **Plaintiffs,** | ) |
| **v.** | ) |
| | ) |
| **JONATHAN K. HERGERT,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court for consideration and disposition are numerous motions in limine:

Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT

CONCERNING PLAINTIFF GILLILAND'S PERSONAL FINANCES (Document No. 109);

Plaintiffs' MOTION IN LIMINE CONCERNING EVENTS RELATED TO PLAINTIFFS'

ALLEGED ROLE IN THE CESSATION OF MAIN HOLDING'S BUSINESS OR IN

DEFENDANT'S INVOLVEMENT IN MATTERS RELATED TO ITS MEDICAL RECORDS

(Document No. 110); Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR

ARGUMENT CONCERNING COMPLAINTS FILED IN ADVANCE OF THE TIME

PLAINTIFFS KNEW THAT DEFENDANT HERGERT WAS A MANAGER OF MAIN

HOLDING OR THE TIMING OF DISCOVERY IN THIS ACTION (Document No. 111);

Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE AND/OR ARGUMENT

REGARDING ISSUES THIS COURT HAS ALREADY DETERMINED AS MATTERS OF

LAW (Document No. 112); Plaintffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR

ARGUMENT BY DEFENDANT HERGERT THAT PROPORTIONATE, COMPARATIVE

OR CONTRIBUTORY NEGLIGENCE MIGHT MITIGATE DEFENDANT'S JOINT AND

SEVERAL LIABILITY FOR SECURITIES FRAUD (Document No. 113); Defendant's

MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY BY PLAINTIFFS' EXPERT

WITNESS DOUGLAS M. BRANSON (Document No. 114), with brief in support; Plaintiffs'

MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT THAT PLAINTIFFS

MUST PROVE SCIENTER, REASONABLE RELIANCE, AND/OR OTHER ELEMENTS OF

CLAIMS UNDER FEDERAL RULE 10B-5 THAT DO NOT APPLY TO THEIR CLAIMS

UNDER THE PENNSYLVANIA SECURITIES ACT (Document No. 116); Defendant's

MOTION IN LIMINE TO EXCLUDE EVIDENCE OF GERAMITA'S ALLEGED

CONVERSION OF FUNDS (Document No. 117), with brief in support; Defendant's MOTION

IN LIMINE RELATING TO ALLEGED PUNITIVE DAMAGES (Document No. 119), with

brief in support; Defendant's MOTION IN LIMINE TO CLARIFY THAT THE AUGUST 16,

2004 NOTE IS NOT A SECURITY IN MAIN HOLDING (Document No. 121), with brief in

support; and Defendant's  MOTION IN LIMINE TO PRECLUDE HEARSAY TESTIMONY

REGARDING COMMUNICATIONS BETWEEN GILLILAND AND GERAMITA (Document

No. 123), with brief in support.  Responses have been filed (Document Nos. 125-135) and the

Court further notes the errata filed at Document No. 136.  The motions are ripe for disposition

and will be addressed seriatim.

As a preliminary matter, some of the pending motions are targeted at evidence that one

party guesses that the opposing party might present.   Some of these motions were unnecessary in

light of the clarifications and representations made in response.  The time and expense of filing

such motions may have been minimized through a more cooperative and forthcoming interaction

among counsel.

<u>Gilliland's Personal Finances (# 109)</u>

Plaintiffs seek to prevent Hergert from offering evidence regarding Gilliland's personal wealth or the amount he obtained from the sale of Geodax Technology, Inc. Plaintiffs are willing to stipulate that Gilliland is a "sophisticated investor" and do not object to questions regarding Gilliland's experience and knowledge in the industry. The motion is directed only at the "actual dollar figures" involved. Defendant contends that the evidence is material and that a stipulation is inadequate. Defendant contends that the jury is entitled to understand the magnitude of Gilliland's previous investments and successes, which are probative of the reasonableness of Gilliland's claimed reliance on representations made by Hergert and/or Geramita.

Defendant's response is not directed at the narrow relief sought by Plaintiffs. Defendant is entitled to thoroughly explore Gilliland's experience and knowledge in the industry, including his prior investments, and Plaintiffs do not contest this point. Defendant may also solicit evidence that Gilliland's prior investments were profitable. However, the Court agrees with Plaintiffs that the "actual dollar figures" involved in earlier, unrelated transactions are not relevant to any of the issues in this case and therefore should be excluded pursuant to F.R.E. 401. Any possible relevance is outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury and waste of time such that "actual dollar figures" would be excluded under F.R.E. 403.

Accordingly, Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING PLAINTIFF GILLILAND'S PERSONAL FINANCES (Document No. 109) is **GRANTED**.

<u>Events re Closure of Main Holding (#110)</u>

Plaintiffs seek to exclude evidence and argument related to cessation of the business operations of Main Medical Holdings, LLC ("Main Holding"), Mid Atlantic Imaging, Inc., and Main Medical Ventures (collectively, the "Main Medical Companies") and preservation of patient diagnostic imaging records as set forth in sections G and H of Defendant's pretrial statement.  Plaintiffs contend (1) that such evidence is irrelevant because it occurred several months after the alleged misrepresentations at issue and will confuse the jury; and (2) that Defendant is estopped because he refused to produce discovery regarding the closure of the Main Medical Companies on the grounds of relevance.  At a minimum, if Defendant is permitted to introduce such evidence, Plaintiffs seek the production of all relevant documents and an opportunity to conduct followup discovery.

In response, Defendant now contends that the matters are "highly relevant."  Specifically, Defendant intends to argue that Gilliland's last-minute decision in February 2005 not to make a major equity investment in Main Holding was the proximate cause of his damages.  Defendant further argues that his personal and voluntary investment of time to preserve medical records refutes Plaintiff's theory that the fear of losing legal fees motivated Hergert to make misrepresentations.  Defendant does not address the estoppel argument, except to state that Plaintiffs' document requests were "overbroad" and did not pertain to the topics in sections G and H of the pretrial statement.

The Court agrees with Plaintiffs.  As an initial matter, Hergert objected to document requests targeting the closure of the Main Medical Companies because they sought "information which is irrelevant to any issue involved in this action."  It is simply not accurate to now portray

this as an objection to overbreadth. Defendant stonewalled this specific discovery by claiming it to be irrelevant and he will have to live with the consequences of having taken that position. In any event, the Court agrees (with both parties) that information regarding the closure of the Main Medical Companies and the efforts to preserve medical records is not relevant to the Pennsylvania Securities Act, negligent misrepresentation and unlawful concerted action claims that will be presented to the jury. Gilliland entered into an agreement dated August 16, 2004 and Southeastern entered into an agreement dated December 17, 2004. The Main Medical Companies abruptly ceased operations in May 2005, some six to nine months later. This trial concerns Hergert's alleged conduct in inducing Plaintiffs to enter into the agreements in 2004. It is simply not a defense for Hergert to argue that Gilliland's own refusal to make a further influx of cash several months later caused the company to fail and was the proximate cause of his damages. It was entirely reasonable for Gilliland – who allegedly believed that he was a victim of fraud – not to invest any more money. Moreover, the complicated circumstances of the closure would introduce numerous confusing and irrelevant issues. Defendant contends that there would not be any side trials, but then launches into the "hotly disputed" question of whether he had a legal duty to represent the Main Medical Companies in a state court lawsuit brought by the Pennsylvania Attorney General regarding preservation of medical records – which amply illustrates the danger of permitting such evidence.[1] Thus, the Court concludes that F.R.E. 403 dictates exclusion of this testimony/evidence. Defendant may explore the interactions Gilliland had with Geramita during the August 2004-February 2005 timeframe, including the negotiations regarding an equity infusion, but Defendant may not introduce evidence regarding the closure of

---

[1] The alleged "extortion" of DeMarino by Hergert also appears to be a side issue.

5

the Main Medical Companies or argue that Gilliland caused the failure, nor may Defendant introduce evidence or argument regarding his efforts to preserve medical records maintained by the Main Medical Companies.

Accordingly, Plaintiffs' MOTION IN LIMINE CONCERNING EVENTS RELATED TO PLAINTIFFS' ALLEGED ROLE IN THE CESSATION OF MAIN HOLDING'S BUSINESS OR IN DEFENDANT'S INVOLVEMENT IN MATTERS RELATED TO ITS MEDICAL RECORDS (Document No. 110) is **GRANTED**.


References to Procedural Issues (#111)

Plaintiffs seek to exclude evidence and argument concerning the facts that: (1) Hergert was not named as a Defendant in the original complaint; and (2) Plaintiffs did not take Geramita's deposition prior to his death. Plaintiffs argue that the procedural history of the case has no probative value and would only confuse and mislead the jury. Defendant opposes the motion and contends that the procedural history is relevant to the credibility of the witnesses. Defendant apparently seeks to surmise to the jury that Gilliland did not name him as a defendant in the original complaint because Gilliland had ordered Geramita not to reveal his identity to Hergert.

The Court agrees with Plaintiffs. Litigation decisions (such as the naming of Defendants or the scheduling of depositions) were likely made by Plaintiffs' lawyers, and thus, do not reflect on Gilliland's credibility. Moreover, the procedural history is not relevant to the underlying facts of the case and would introduce multiple misleading and fruitless side issues which would only

serve to confuse the jury and lengthen the trial.[2]

Accordingly, Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING COMPLAINTS FILED IN ADVANCE OF THE TIME PLAINTIFFS KNEW THAT DEFENDANT HERGERT WAS A MANAGER OF MAIN HOLDING OR THE TIMING OF DISCOVERY IN THIS ACTION (Document No. 111) is **GRANTED**.


Law of the Case (# 112)

Plaintiffs seek to preclude evidence and argument regarding issues that the Court has already decided in its earlier rulings. Specifically, Plaintiffs point to Defendant's pretrial statement, in which Hergert states that he intends to re-argue (1) that the August 16 Note is not a "security," (2) that he cannot be held liable under 70 P.S. § 1-503 for Geramita's alleged misconduct and cannot be liable without an adjudication of Geramita's liability, (3) that the law firm bill did not constitute a "pecuniary interest," and (4) that he cannot be liable because Gilliland was anonymous. Defendant has responded to each topic and Court will address them seriatim.

1.    August 16 Note

Defendant preserves his disagreement with the Court's ruling that the August 16 Note is a "security" but recognizes that it is a settled issue. Defendant correctly observes that the Court did not decide whether the security was issued by Geramita or Main Holding, an issue that will

---

[2]If Annette McPeak testifies, Defendant may establish that she was named as a Defendant and was later dropped as a party.

be addressed *supra*.  Defendant further observes that the Note will be in evidence and its terms

will be available for use in examination and argument.  The Court concludes that the evidence

and arguments outlined by Defendant are appropriate.

> 2.      Section 1-503 Liability

The Court denied both parties' motions for summary judgment as to § 1-503 because

there were disputes of material fact, including Geramita's liability.  As the Court explained,

while Plaintiffs must prove that Geramita was primarily liable in order to hold Hergert indirectly

liable under section 1-503, that liability may be determined during this trial rather than in a

separate proceeding.  *See* Memorandum Opinion at 10.  Thus, Hergert is permitted to introduce

evidence and to argue that Geramita was not directly liable to Plaintiffs but he cannot argue that

Plaintiffs have failed to introduce evidence of a prior "adjudication" of Geramita's liability.

Defendant properly recognizes this distinction.  The Court intends to propound a special

interrogatory to the jury regarding Geramita's primary liability in connection with the § 1-503

claim.[3]  Defendant is also entitled to argue that he is not liable under § 1-503 even if the jury

believes that Geramita was primarily liable.  The Court concludes that the evidence and

arguments now outlined by Defendant are appropriate.

> 3.      Pecuniary Interest

The existence of a pecuniary interest arose in the context of the negligent

---

[3]Defendant did not directly respond to Plaintiffs' contentions regarding his liability under § 1-503 for Geramita's alleged misconduct.  Obviously, Defendant cannot contravene the Court's summary judgment rulings, including its conclusion that victims of securities fraud may bring actions under § 1-503 against persons who materially aided the violation.

misrepresentation claims.[4]  In denying Defendant's motion for summary judgment on the basis

that he lacked a sufficient pecuniary interest, the Court stated: "The substantial legal bill

outstanding to Hergert's law firm constituted a sufficient, if not significant, "pecuniary interest."

Memorandum Opinion at 12.  Defendant now seeks to argue that there was no substantial legal

bill outstanding to his law firm "for legal work performed with regard to these Notes" and that

the fee was due to the firm, rather than to Hergert personally.  The Court rejects these arguments

of Defendant.  It does not matter what specific work led to the legal bill owed to Eckert Seamans

because the summary judgment record established that at the time of the closing on the August

16 Note, over $138,000 in unpaid legal fees had been billed to the Main Medical Companies.

Plaintiffs' Statement of Undisputed Facts ¶ 22 and Defendant's Response thereto.  Similarly, it is

immaterial that the bill was owed to the firm and not Hergert individually.  Hergert certainly had

a personal pecuniary interest in maintaining his employment at Eckert Seamans and in

maximizing his compensation.  At least potentially, Hergert's status might have been affected by

the write-off of such a significant bill, such that he had an incentive to obtain an infusion of cash

from Plaintiffs.[5]  The Court has determined that Hergert had a sufficient "pecuniary interest" to

establish a negligent misrepresentation claim and Defendant will not be permitted to reopen that

issue.

---

[4]The Court did not address Hergert's pecuniary interest in the context of the Pennsylvania
Securities Act claims, but rather, concluded that whether he was a "seller" would be a question of
fact for the jury.  Memorandum Opinion at 7-8.  Hergert may also be liable if he was motivated
by a desire to serve the financial interests of the securities owner.

[5]During discovery, Defendant opposed detailed questioning regarding the specifics of his
compensation as irrelevant.  *See* Defendant's Response to Motion to Compel dated December 1,
2006 (Document No. 61).

4.     Gilliland's Anonymity

Plaintiffs contend that Gilliland's anonymity is irrelevant.  The Court does not agree.  In its Memorandum Opinion, the Court stated: "The mere fact that Gilliland requested anonymity would not immunize Hergert from liability."  Even though anonymity does not defeat Plaintiff's cause of action as a matter of law, it is a far different matter to say that it is irrelevant as a matter of fact.  The circumstances of the parties' interactions surrounding the loans are relevant for the jury to consider.

Accordingly, Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE AND/OR ARGUMENT REGARDING ISSUES THIS COURT HAS ALREADY DETERMINED AS MATTERS OF LAW (Document No. 112) is **GRANTED IN PART AND DENIED IN PART**.


Joint and Several Liability (#113)

Plaintiffs seek to preclude Defendant from arguing that the Pennsylvania Securities Act contemplates only proportionate and/or comparative liability, rather than joint and several liability.  Plaintiffs point to § 1-503, which explicitly provides for joint and several liability.  Defendant does not directly respond to this narrow argument.  Instead, Defendant contends that he is entitled to introduce evidence relating to Plaintiffs' lack of reliance on the alleged misrepresentations as to the §§ 1-401 and 1-501 claims,[6] and that he is entitled to prove the affirmative defense of contributory negligence to defeat the negligent misrepresentation claims.

Accordingly, Plaintffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT BY DEFENDANT HERGERT THAT PROPORTIONATE, COMPARATIVE

---

[6]Whether reliance is an element of a Securities Act claim will be analyzed in detail *supra*.

OR CONTRIBUTORY NEGLIGENCE MIGHT MITIGATE DEFENDANT'S JOINT AND
SEVERAL LIABILITY FOR SECURITIES FRAUD (Document No. 113) is **GRANTED**.


Expert Testimony (#114)

Defendant seeks to exclude multiple portions of the proposed testimony of Douglas
Branson, Plaintiffs' expert witness, specifically, Branson Expert Report ¶¶ 24-27,31, 33, 35, 37,
38,40-43, 45. In essence, Defendant contends that Branson is usurping the role of the trial judge
in explaining the relevant law and/or the roles of the lawyers and jury.

Plaintiffs, in response, represent that Branson's trial testimony will adhere to the
principles and guidelines set forth in this Court's Memorandum Order dated November 14, 2007
(which explained the parameters of Defendant's expert testimony) and in *Berckeley Investment
Group, Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2005). In *Berckeley*, the Court of Appeals
explained that expert testimony regarding customs and practices in a particular industry may be
admissible although opinions as to whether a party complied with legal duties under the
securities laws would be inadmissible as an improper legal opinion.

The Court has reviewed each of the specific objections made by Defendant in detail, but
need not address each separately. To be sure, there are a number of places in the expert report in
which Branson phrases his statements in a way that strays close to the line of legal opinions.
However, the bulk of his report contains permissible opinions regarding the cardinal principles
and practices among experienced securities practitioners. These industry practices will surely be
helpful to the jury in determining whether Hergert acted properly in rendering legal services to
his clients or whether he "crossed the line" as alleged by Plaintiffs. Given Plaintiffs'

representation referenced above, the Court will not categorically preclude Branson's testimony in advance of trial. However, counsel for Defendant are certainly free to object to particular questions or answers during the course of Branson's testimony. Defense counsel are also free to thoroughly explore Branson's qualifications to testify about highly leveraged or "bootstrap" acquisitions at trial.

Accordingly, Defendant's MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY BY PLAINTIFFS' EXPERT WITNESS DOUGLAS M. BRANSON (Document No. 114) is **DENIED WITHOUT PREJUDICE**.

Elements of Section 1-501 Claim

Plaintiffs ask the Court to reconsider the elements needed to establish a violation under section 1-501 of the Pennsylvania Securities Act. Plaintiffs pled violations of §§ 1-401, 1-501 and 1-503 of the Pennsylvania Securities Act as a single cause of action. At the summary judgment stage, Plaintiffs did not argue that a 1-501 cause of action was distinct from a 1-401 claim.[7] Accordingly, the Court adopted the view set forth in *Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp.2d 644, 659 (W.D. Pa. 1999) (citations omitted), which reasoned that § 1-401 was modeled on federal Rule 10b-5 and required the same elements of proof, and that § 1-501 made actionable and set forth the civil penalties for a violation of § 1-401. Similarly, in *Goodman v. Moyer*, 523 F. Supp. 35, 39 (E.D. Pa. 1981), a federal district

_____

[7]Plaintiffs' Memorandum in Support of Partial Summary Judgment contained an extensive discussion of the differences between state and federal securities law, but in the context of secondary liability under section 1-503. Indeed, Plaintiffs noted, without comment, that federal law requires scienter as an element of a 10b-5 claim. *Id.* at 18-19 & n. 27, 28.

court concluded that Pennsylvania would require proof of an intent to defraud. The Court stated:

> In light of the similarity of the language used, and the similar policy carried out through Rule 10b-5 and sections 1-401 and 1-501 of the Pennsylvania Securities Act, the Court must conclude that Pennsylvania courts would require similar elements of proof in actions brought under those sections of the Pennsylvania Securities Act.

Plaintiffs now argue that § 1-501(a)(ii) also creates a separate, stand-alone cause of action modeled on § 12(2) of the federal Securities Act of 1933, codified at 15 U.S.C. § 77l(a)(2). Specifically, Plaintiffs contend that to make out a § 1-501 claim, they do not need to prove: (1) that they reasonably relied on the alleged misrepresentations, (2) that Hergert acted with scienter, or (3) that the misrepresentations and/or omissions were the proximate cause of their losses.

In *Kronenberg v. Katz*, 872 A.2d 568, 598-99 (Del. Ch. 2004), the Court concluded that § 1-501 provides an independent cause of action, which does not require a plaintiff to prove reliance, scienter or causation. The Court reasoned as follows:

> Because § 1-501(a) of the Pennsylvania Securities Act is so clearly modeled on § 410(a)(2) of the Uniform Act, and therefore § 12(2) of the federal Securities Act, it is likely that the Pennsylvania Supreme Court would interpret § 1-501(a) consistently with its statutory inspirations and not engraft a reliance requirement onto the statute, irrespective of whether certain federal district court decisions purport to do so.

There is no binding precedent on point. In essence, the dispute boils down to a prediction of whether the Pennsylvania Supreme Court would recognize a separate and distinct cause of action under section 1-501 or would recognize only a combination §§ 1-401/1-501 claim that mirrors Rule 10b-5. The Securities Act, 70 P.S. § 1-703(a), arguably lends credence to both positions by stating: "This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact the "Uniform Securities Act" and to coordinate the

interpretation and administration of this act with related Federal regulation."

Section 1-501, entitled "Civil liabilities" states, in relevant part (emphasis added):

(a) Any person who: . . . (ii) offers or sells a security in violation of sections 401, 403, 404 **or otherwise** by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the purchaser not knowing of the untruth or omission, **and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission**, shall be liable to the person purchasing the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security.

The Pennsylvania Securities Act was based on the 1956 Uniform Securities Act, which in turn, was modeled after federal law. *Osterneck v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 841 F.2d 508, 510 (3d Cir. 1988), *overruled on other grounds, Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988).[8]  The federal law equivalent to § 1-401 is found at Rule 10b-5.  Thus, the elements of a § 1-401/1-501 claim are the same as those of a Rule 10b-5 claim as stated in the Memorandum Opinion.  The Court adheres to this part of its analysis.

However, the Court agrees with the analysis in *Kronenberg* that the Pennsylvania Supreme Court would also recognize a stand-alone § 1-501 claim.  The statutory text of § 1-501 expressly imposes liability on a person who "otherwise" sells a security by means of a misleading statement or omission.  The closest federal law equivalent to § 1-501 is 15 U.S.C. § 77l(a)(2).[9]

---

[8]*Kronenberg* states that Section 1-401 is modeled on section 101 of the Uniform Act and § 1-501 is based on § 410(a)(2) of the Uniform Act.  872 A.2d at 596-97.

[9]The text of 15 U.S.C. § 77l(a)(2) is similar, but not identical, to § 1-501:

§ 77l. Civil liabilities arising in connection with prospectuses and

The Court of Appeals for the Third Circuit has stated that there is a substantial difference between Rule 10b-5 claims and § 77l claims. In *In re Donald J. Trump Casino Securities Litigation - Taj Mahal*, 7 F.3d 357, 368 n.10 (3d Cir. 1993) (citations omitted), the Court explained: "Under the former, the plaintiffs must plead not only that the defendants made material omissions and/or misrepresentations, but also that they reasonably relied on them and that the defendants acted with knowledge or recklessness. In contrast, §§ 11 and 12(2) impose no such requirements." In *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256, 269-70 (3d Cir. 2006), the Court commented that § 77l(a)(2) is a "virtually absolute" liability provision that does not require an allegation that defendants possessed scienter. To state a prima

---

communications

(a) In general

Any person who--
(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

facie case, the plaintiff must simply "allege the purchase of securities pursuant to a materially false or misleading prospectus or oral communication." *Id.* By its text, § 1-501 puts the burden on Defendant to prove "that he did not know and in the exercise of reasonable care could not have known of the untruth or omission." Unlike federal law, the lack of "loss causation" is not explicitly framed an affirmative defense under § 1-501, *compare* 15 U.S.C. § 77l(b). In *Klein v. Boyd*, 1996 WL 675554 (E.D. Pa. 1996), *aff'd in part, rehearing en banc granted, judgment vacated,* 1998 WL 55245 (3d Cir. 1998), the Court noted that causation is not an element under the Uniform Securities Act and that the parallel federal claim does not require proof of loss causation. This Court agrees with the conclusion in *Klein* that "causation is shown by demonstrating some causal relationship between the misrepresentation and the plaintiffs' purchase." *Id.* at *18 (citation omitted). In sum, the Court agrees with the analysis set forth in *Kronenberg* and predicts that the Pennsylvania Supreme Court would recognize a distinct, separate cause of action under § 1-501 that does not require Plaintiffs to prove scienter or reliance, and requires Plaintiffs to demonstrate some causal relationship between the misrepresentation and their purchase, but not loss causation.

Accordingly, Plaintiffs' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT THAT PLAINTIFFS MUST PROVE SCIENTER, REASONABLE RELIANCE, AND/OR OTHER ELEMENTS OF CLAIMS UNDER FEDERAL RULE 10B-5 THAT DO NOT APPLY TO THEIR CLAIMS UNDER THE PENNSYLVANIA SECURITIES ACT (Document No. 116) is **GRANTED IN PART AND DENIED IN PART**.

<u>Geramita's Conduct (#117)</u>

Defendant seeks to exclude evidence of Geramita's alleged conversion of $150,000 of the proceeds of the $550,000 loan made by Gilliland. Defendant argues that because Geramita died and his estate is not a party, evidence of Geramita's motive or scienter is no longer relevant or material and would be unfairly prejudicial. In response, Plaintiffs point out that in order to establish a § 1-503 claim against Hergert for secondary liability, they must first prove Geramita's primary liability. Plaintiffs further argue that the evidence is necessary to explain the full measure of Gilliland's damages because the Note reflects only $400,000 of the investment loss. Plaintiffs offer to enter into a stipulation which would avoid the necessity of presenting such evidence at trial.

The Court agrees with Plaintiffs. As Defendant recognizes, evidence of Geramita's liability is a precondition to Hergert's liability under § 1-503. *See* Document No. 124 at 2 n.1. The evidence Defendant seeks to exclude is obviously relevant and material to the primary liability of Geramita and it is legally admissible. The parties are encouraged to achieve a stipulation to streamline the presentation of such evidence at trial.

Accordingly, Defendant's MOTION IN LIMINE TO EXCLUDE EVIDENCE OF GERAMITA'S ALLEGED CONVERSION OF FUNDS (Document No. 117) is **DENIED**.


<u>Punitive Damages (#119)</u>

Defendant seeks to preclude Plaintiffs from recovering punitive damages. Defendant accurately notes that punitive damages cannot be recovered under the Pennsylvania Securities Act. Defendant also contends that Plaintiffs should be barred from recovering punitive damages

in connection with their common law claims, or at a minimum, be precluded from offering evidence or argument regarding punitive damages until the Court determines that they have adduced sufficient evidence of outrageous conduct. In response, Plaintiffs agree that the Pennsylvania Securities Act does not provide for punitive damages. Plaintiffs further agree not to discuss punitive damages in their opening statement to the jury.

Plaintiffs are certainly entitled to introduce evidence regarding Hergert's conduct and cannot, at this point, be precluded from attempting to establish a factual basis to support an award of punitive damages. Defendant will have ample opportunity to argue that Plaintiffs have failed to meet their significant burden to prove that Hergert's conduct was outrageous. However, given Plaintiffs' representations, there is no instant dispute between the parties and the ultimate ruling on punitive damages is reserved until trial.

Accordingly, Defendant's MOTION IN LIMINE RELATING TO ALLEGED PUNITIVE DAMAGES (Document No. 119) is **DENIED AS MOOT WITHOUT PREJUDICE**.


The "Issuer" of the August 16 Note (# 121)

Defendant seeks a clarification that the August 16, 2004 Note is not a security "in" or "issued by" Main Holding. Defendant notes, correctly, that in the Memorandum Opinion the Court determined that the August 16 Note was a "security" but did not make any findings as to whether it was "issued by" Geramita or Main Holding. Defendant asks the Court to make a specific finding that Geramita was the issuer and to then hold that Gilliland is precluded from arguing that he is an investor in Main Holding. Plaintiffs strongly disagree with Defendant's position and characterize it as "absurd" and "bizarre."

Defendant is correct, as is clear from the explicit language of the August 16 Note, that Anthony J. Geramita was the borrower and was the "issuer" of the August 16 Note. By the terms of the Note, Gilliland did not invest directly in Main Holding. Rather, Gilliland loaned Geramita $550,000 pursuant to the terms of the Promissory Note and Security Agreement dated August 16, 2004. The loan was secured by 1,833 Class B units of membership interest in Main Medical Holding, LLC, which were to have been purchased by Geramita with the proceeds of the loan (the "Acquired Units"). Gilliland had an option to convert all or a portion of the loan repayment into Acquired Units. In other words, Gilliland had an option to be repaid by Geramita either in cash or in Class B units of membership in Main Holding that Geramita was to have acquired with the loan proceeds for that purpose. The August 16 Note provided that unless and until conversion was effected, Gilliland "shall not be, and ... shall not be entitled to any rights afforded to, a holder of Acquired Units." It was the borrower, Geramita, who was required to deliver to Gilliland the notices and communications given by Main Holding to its security holders. In sum, it appears that Geramita borrowed money from Gilliland to purchase Acquired Units of Main Holding which were pledged to Gilliland as security for the obligations of Geramita on the Note andGilliland had the option to be repaid upon maturity in cash or Acquired Units of Main Holding. The terms of the August 16 Note did not create a direct relationship between Gilliland and Main Holding.

The Court adheres to its previous conclusion that the August 16 Note falls within the expansive definition of "security" set forth at 70 P.S. § 1-102(t) and therefore, the Pennsylvania Securities Act claims may be presented to the jury. As to the § 1-401/1-501 claim, Plaintiffs allege: (1) that defendant made misstatements or omissions of material fact; (2) with scienter;

(3) in connection with a purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the cause of their injury. As to the stand-alone § 1-501 claim, Plaintiffs allege the purchase of securities pursuant to a materially false or misleading prospectus or oral communication. As to the § 1-503 claim, Plaintiffs allege that Hergert was a broker-dealer or agent who materially aided in the act or transaction constituting the violation. The questions of who "issued" the August 16 Note or whether Gilliland became an "investor" in Main Holding do not appear to be elements of the prima facie claims.

Neither party has cited any authorities which discuss the legal test for determining whether the August 16 Note was a security "in" Main Holding or whether Gilliland was an "investor in Main Holding" or the legal ramifications which may flow from such a finding. The Court will certainly entertain such memoranda. The Court declines to make such findings as a matter of law without the benefit of a more fully-developed record.

Accordingly, Defendant's MOTION IN LIMINE TO CLARIFY THAT THE AUGUST 16, 2004 NOTE IS NOT A SECURITY IN MAIN HOLDING (Document No. 121) is **GRANTED IN PART AND DENIED IN PART**.

Gilliland's Conversations With Geramita (#123)

Defendant seeks to preclude Gilliland from testifying about conversations he had with Geramita. Neither side has provided specific details regarding these alleged conversations.[10] Defendant argues that such statements are inadmissible because Plaintiffs failed to take

---

[10]One statement at issue will be Geramita's allegedly false representation that he invested his own money in Main Holding.

Geramita's deposition, are barred by the Pennsylvania Dead Man's Act, 42 Pa.C.S.A. §§ 5930-5935, are hearsay, and are simply not relevant. Plaintiffs contend that the blanket exclusion now sought by Defendant is premature without knowing what specific evidence will be offered or in what context. Plaintiffs also argue that Defendant's objections as to hearsay and the Dead Man's Act can be rejected as a matter of law.

The Pennsylvania Dead Man's Act is construed narrowly and applies only when three criteria are met: (1) the deceased must have had an actual right or interest in the matter at issue, i.e. an interest in the immediate result of the suit; (2) the interest of the witness-not simply the testimony-must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest. *Kovach v. General Telephone Co. of Pa.*, 489 A.2d 883, 886 (Pa. Super. 1985). Obviously, these criteria are not satisfied in this case as no rights of Geramita have passed to a party of record. Defendant acknowledges this authority but contends that despite the absence of the Geramita estate as a defendant, admission of Geramita's statements would contravene the purpose of the Act. The Court disagrees with Defendant. As explained in *Kovach*: "The Dead Man's Rule was enacted to protect the estate of a decedent against a claim based on testimony of a surviving party as to a transaction with a decedent. The rule exists for the protection of the dead man's estate ..." *Id.* Because Geramita's estate is not a party and has no interest in the outcome of the lawsuit, there is no need to protect it in this action and the purpose of the Dead Man's Act does not apply.

Plaintiffs have accurately recited the law that a statement offered to prove its falsity, as opposed to its truth, is not hearsay. *United States v. Streeval*, 70 Fed. Appx. 646, 649 (3d Cir. 2003) (unpublished) (citing *Anderson v. United States*, 417 U.S. 211, 219-20 (1974)). The

remainder of the parties' arguments are premature and must be resolved at trial in the context in which specific evidence is offered. The Court cannot determine, on the present state of the record, whether or not a particular statement will qualify as hearsay and/or should be excluded pursuant to F.R.E. 403.

Accordingly, Defendant's MOTION IN LIMINE TO PRECLUDE HEARSAY TESTIMONY REGARDING COMMUNICATIONS BETWEEN GILLILAND AND GERAMITA (Document No. 123) is **DENIED IN PART** as to the Dead Man's Act **and DENIED IN PART WITHOUT PREJUDICE** as to hearsay and F.R.E. 403 objections.

SO ORDERED this 1st day of July, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     David J. Berardinelli, Esquire
        Email: berardinelli@dkyk.com
        Gary L. Kaplan, Esquire
        Email: kaplan@dkyk.com

        William B. Mallin, Esquire
        Email: wmallin@eckertseamans.com
        John R. Kenrick, Esquire
        Email: jkenrick@eckertseamans.com