IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID L. GILLILAND and SOUTHEASTERN IMAGING GROUP, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-cv-1059-TFM |
| JONATHAN K. HERGERT, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT JONATHAN K. HERGERT'S MOTION FOR CONTINUANCE IN LIGHT OF THE MEMORANDUM OPINION AND ORDER DATED JULY 1, 2008

Defendant Jonathan K. Hergert ("Mr. Hergert"), by and through his undersigned counsel, Kevin P. Lucas, Esq., and Eckert Seamans Cherin & Mellott, LLC, files this Motion for Continuance in Light of the Memorandum Opinion and Order Dated July 1, 2008. In support of this Motion, Mr. Hergert states as follows:

1. This Motion essentially requests relief in the alternative to Mr. Hergert's separate contemporaneous Motion to Amend the Court's July 1, 2008 Memorandum Opinion and Order (the "Appeal Certification Motion") to permit pursuit of immediate interlocutory appeal to the Third Circuit Court of Appeals of the controlling question of law whether "the Pennsylvania Supreme Court would recognize a distinct, separate cause of action under 70 P.S. § 1-501 that does not require Plaintiffs to prove scienter or reliance and requires Plaintiffs to demonstrate some causal relationship between the misrepresentation and their purchase, but not loss causation" and to stay further proceedings pending resolution of that controlling question of law. The relief requested herein is appropriate and is sought by Mr. Hergert in the event this Court does not grant

the Appeal Certification Motion or the Third Circuit Court of Appeals declines to accept of the contemplated interlocutory appeal.

2.      On November 15, 2007, this Court issued a Memorandum Order (the "November 15, 2007 Memorandum") denying Defendant's Motion for Summary Judgment and denying Plaintiffs' Motion for Partial Summary Judgment.

3.      In the November 15, 2007 Memorandum, this Court adopted the view set forth in *Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 659 (W.D. Pa. 1999), that section 1-501 of the Pennsylvania Securities Act [70 P.S. § 1-501] provides a private cause of action and penalties for violations of section 1-401 and therefore incorporates the same elements of proof as a claim under Rule 10b-5 of the federal securities laws. (Memorandum Order dated November 15, 2007, at 3-4.)

4.      Thus, this Court held that to prove their claim under section 1-501, Plaintiffs must prove: "(1) that defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the cause of their injury." *Id*. at 4.

5.      At no point during the summary judgment proceedings did Plaintiffs argue that their cause of action under section 1-501 was distinct from their section 1-401 claim. Indeed, as this Court subsequently found, during the summary judgment proceedings "Plaintiffs noted, without comment, that federal law requires scienter as an element of a 10b-5 claim." [Memorandum Opinion and Order dated July 1, 2008 (the "July 1, 2008 Memorandum"), at 12 n.7 (citing Plaintiffs' Memorandum in Support of Partial Summary Judgment, at 18-19 & nn. 27-28).]

{J1205750.1}

6.     Plaintiffs did not file a motion for reconsideration of the November 15, 2007 Memorandum, and Mr. Hergert prepared for trial in reliance thereon. Plaintiffs likewise did not raise any stand alone section 1-501 cause of action in their December 4, 2007 Pretrial Statement nor identify the existence or elements of such purported additional cause of action in the legal issues section of their Pretrial Statement.

7.     In regards to Plaintiffs' claim under section 1-501, the trial defense strategy developed by Eckert Seaman's Cherin & Mellott, LLC ("ESCM") as Mr. Hergert's counsel emphasized contesting the Plaintiffs' anticipated efforts to meet their burden of proving the required elements of such a claim as enumerated by this Court in the November 15, 2007 Memorandum, in particular, scienter, reliance and loss causation.

8.     Seven months after the entry of the November 15, 2007 Memorandum, as part of their eve of trial evidentiary in limine motions, Plaintiffs on June 9, 2008, filed a Motion in Limine to Preclude Evidence or Argument That Plaintiffs Must Prove Scienter, Reasonable Reliance, and/or Other Elements of Claims Under Federal Rule 10b-5 That Do Not Apply to Their Claims Under the Pennsylvania Securities Act (the "Motion in Limine").

9.     In this Motion in Limine, Plaintiffs for the first time essentially asked this Court to reconsider the law of the case as set forth in the Court's November 15, 2007 Memorandum  regarding the elements of Plaintiffs section 1-501 claim and to permit them to assert new, additional, and never before disclosed "stand alone" claims under § 1-501.

{J1205750.1}

10.    As a result of Plaintiffs' delay in not seeking reconsideration during the seven months in which the parties were preparing for trial after issuance of the November 15, 2007 Memorandum, this Court did not have the reason or opportunity to reconsider its prior ruling and decision until July 1, 2008, a mere three weeks before the scheduled trial commencement, when this Court issued its July 1, 2008 Memorandum granting in part and denying in part the Motion in Limine.

11.    In the July 1, 2008 Memorandum, this Court reaffirmed its prior holding that a cause of action under section 1-501 for violation of section 1-401 required proof of the same elements as under federal Rule 10b-5. (July 1, 2008 Memorandum, at 14.)

12.    However, this Court also accepted Plaintiffs' new argument, made for the first time in the Motion in Limine and based on arguments and a Delaware state court decision never previously presented by Plaintiffs to the Court or to Mr. Hergert, to the effect that the Pennsylvania Supreme Court supposedly would recognize a separate, independent cause of action under section 1-501 that does not require proof of reliance or scienter and that requires Plaintiffs to demonstrate only some causal relationship between the untrue statement and their purchase rather than reliance and loss causation. *Id.* at 14-16.

13.    Mr. Hergert recognizes that this Court has the power to reconsider its prior decision[1]. It is equally clear, however, that the law of the case doctrine as followed by the United States Court of Appeals for the Third Circuit imposes a significant limit on

---

[1] There is a serious question, however, whether the granting of the Motion in Limine essentially permitted Plaintiffs to add a new claim against Mr. Hergert after the expiration of the applicable statute of limitations. Mr. Hergert believes that it impermissibly did so. Mr. Hergert does not waive his rights in this regard but presents his above argument in favor of this Motion as if the assertion by Plaintiffs of such new claim were permissible under the circumstances. In any event, and consistent with the relief requested herein, a continuance must be granted after a pleading amendment is allowed in order to avoid prejudice by enabling the defendant "to prepare for and meet the new issue." See Artman v. International Harvester Co., 355 F.Supp. 476, 481 (W.D. Pa 1972).

{J1205750.1}

4

this Court's authority to do so: this Court "must take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." See, e.g., *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979).

14. As explained by the United States Court of Appeals for the Second Circuit, "'[p]rejudice' in this context does not mean harm resulting from the failure to adhere to the prior decision, 'but instead' "refers to a lack of" . . . sufficient "opportunity to prepare armed with the knowledge that'" the prior ruling is not deemed controlling." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999); *see also* Wright et al., Federal Practice & Procedure § 4478.1, at 702-703 (2d ed. 2002).

15. Indeed, where a party is prejudiced by reliance on a previous ruling, denial of a continuance constitutes an abuse of discretion. *See Fontana v. United Bonding Ins. Co.*, 468 F.2d 168, 169-70 (3d Cir. 1972); *Sutherland Paper Co. v. Grant Paper Box Co.*, 183 F.2d 926, 930-31 (3d Cir. 1950). In *Sutherland Paper Co.*, for example, the trial court ruled on certain discovery and summary judgment motions two weeks before trial. In light of those rulings, the defendants moved for a three-month continuance on the basis "that they had been prejudiced in preparing for trial by the delay in the ruling on motions which, had they been disposed of favorably to the defendants, would have made unnecessary certain trial preparation that had now become quite important." *Sutherland Paper Co.*, 183 F.2d at 930. Explaining that the defendants "reasonably, even necessarily, postponed important and time consuming portions of their trial preparation until after decision on these motions," the United States Court of Appeals

{J1205750.1}

for the Third Circuit held that the trial court abused its discretion in denying a continuance. *Id.* at 931.

16. The reasoning of *Sutherland Paper Company* applies with even greater force in the instant case, where Mr. Hergert relied on an actual prior ruling of this Court that remained in effect and unchallenged by Plaintiffs for approximately eight (8) months, rather than on a mere delay in ruling. Plaintiffs failed to file a timely motion for reconsideration of the November 15, 2007 Memorandum, and instead delayed until the last minute prior to the start of trial to seek reconsideration of that prior ruling by means of their Motion in Limine. That is all the more reason to provide Mr. Hergert with reasonable time to defend against this new claim since Plaintiffs' inexplicable delay should not result in a disadvantage to Mr. Hergert and an advantage for Plaintiffs. Moreover, any inconvenience or disruption arising from the delay of trial is the direct result and consequence of Plaintiffs', not Mr. Hergert's, conduct.

17,. Mr. Hergert will be severely prejudiced if he is not granted a continuance to prepare his defenses in light of this Court's July 1, 2008 Memorandum, which radically changed the elements of Plaintiffs' claims and recognized a separate and additional cause of action for so-called stand alone liability under section 1-501. Manifestly, the discovery, preparation, trial plan, tactics and strategy for the defense of claims which require scienter, reliance, and loss causation is fundamentally different from claims which attach liability without proof of scienter, reliance, and loss causation.

18. Significantly, after Plaintiffs' Motion in Limine and the issuance of Court's July 1, 2008 Memorandum, Plaintiffs have made another important shift in their position about their claims under section 1-501. In their Motion in Limine, they sought to

{J1205750.1}

preclude Mr. Hergert from offering evidence of scienter and reliance because they contended that those elements are not part of the case. Now in their re-worked Proposed Jury Instructions served on July 7, 2008, they assert claims under sections 1-401/1-501 which require proof of scienter and reliance and loss causation, and at the same time, they also assert stand alone claims under section 1-501 without proof of scienter or reliance or loss causation. Thus, Plaintiffs now concede that they must prove reliance,scienter, and loss causation for their sections 1-401/1-501 claims and that Mr. Hergert may offer evidence on scienter and reliance for that purpose, but at the same time (according to Plaintiffs), liability can attach under their new claims for an innocent, untrue statement or omission without scienter, reliance, or loss causation. This makes it clear that, contrary to Plaintiff's contention in their Motion in Limine, scienter and reliance and loss causation have always been involved in Plaintiffs' securities claims, and the stand alone section 1-501 claims are brand new claims not previously in this case. Plaintiffs latest new approach does not mitigate prejudice to Mr. Hergert because (according to Plaintiffs and per the July 1, 2008 Memorandum) liability can attach for the new claims on proof by Plaintiffs of less elements. Thus, the exposure of Mr. Hergert under the new claims is both changed and also substantially increased without adequate time being provided to Mr. Hergert to develop and prepare adjusted defense strategies to counter the new liability exposure framework. The fact that Plaintiffs as of July 7, 2008 are asserting both theories (i.e., sections 1-401/1-501 claim and a stand alone section 1-501) further complicates Mr. Hergert's trial plan and adds to the resulting prejudice. Plaintiffs' new stand alone claims under section 1-501

{J1205750.1}

(even if asserted in the alternative) require that Mr. Hergert be given time and opportunity to develop his defenses .

19.    These new claims by Plaintiffs, never alleged by them in their Second Amended Complaint, create liability (according to Plaintiffs and the July 1, 2008 Memorandum) under a state statute which is modeled after and is to be construed in accordance with varying versions of the Uniform Securities Act adopted by numerous states as well as federal regulation, including Section 12(2) of the federal Securities Act of 1933, codified at 15 U.S.C. § 77l(a)(2) . As discussed in Mr. Hergert's accompanying Appeal Certification Motion, what the Pennsylvania Supreme Court would decide the law to be concerning the existence of and the elements of and defenses to a supposed stand alone section 1-501 claim is unknown, confusing, subject to conflicting reference authority and substantial grounds for difference of opinion. It is unfair (and perhaps a denial of his due process rights) for Mr. Hergert to have to proceed to trial within a few weeks of such a dramatic change in the law of this case. The Court likewise will be faced at trial with numerous additional evidentiary and substantive law issues without the benefit of the insight and focus that orderly discovery and pretrial motions (e.g., summary judgment on the new stand alone section 1-501 claim) would provide.

20.    Accordingly, the changed liability framework resulting from the July 1, 2008 Memorandum raises a host of factual and legal issues which Mr. Hergert must be allowed to explore and develop, including through additional discovery and additional expert testimony. This major effort can not be done in a few weeks prior to the current trial date, which was set when the prior November 15, 2007 Memorandum and the law of the case therein was in effect. The following illustrations of the type of new and

{J1205750.1}

different trial preparation and strategy that needs or may be needed to be pursued by Mr. Hergert are instructive in this regard.

21.     Mr. Hergert now must consider additional expert testimony or even an additional expert. For example, Section 12(2) of the Federal Securities Act -- which the July 1, 2008 Memorandum refers to (at 14) as "the closest federal law equivalent to §1-501" -- creates liability for rescission in connection with a security prospectus. Mr. Hergert needs to explore with experts (including possibly Plaintiffs' expert by deposition) the custom and practice related to security offerings which may be undone by an untrue material statement or omission in a security prospectus without scienter or reliance.

22.     In view of this new cause of action asserted by Plaintiffs, Mr. Gilliland's deposition needs or may need to be re-opened. At his prior deposition, ESCM as Mr. Hergert's counsel emphasized the reliance defense which is allegedly not a defense under Plaintiffs' new stand alone section 1-501 theory of recovery. Among other things, the causation issue, the "by means of" issue, and the tender issue referred to below are new issues which must be considered under the new alleged "stand alone" claim.

23.     This Court in its July 1, 2008 Memorandum, stated that Pa. Section 1-501 is modeled on Section 12(2) of the Federal Securities Act. The "by means of" issue under Section 1-501 and Section 12(2) needs to be fully explored factually and legally. For example,  this issue arguably makes the Confidential Information Circular irrelevant to the new claims because Plaintiff did not subscribe for membership units pursuant to that Offering Circular, but instead chose to make a loan to Mr. Geramita (that Offering Circular is clearly not relevant to the December 17 Note). Mr. Gilliland needs to be examined about the "by means of" element, as well as the new causation theory

{J1205750.1}

(without reliance) which may require Plaintiffs to show that the loss of value of the Notes resulted from the alleged untrue statement or omission.

24.     Also with respect to the questions of additional depositions, it should be noted that Karen Bray was the only person who received the Offering Circular who actually subscribed for membership units, namely, $50,000 worth of B units.   Mr. Hergert decided there was no reason to take her deposition under the §§ 1-401/1-501 theory because, among other things, she could shed no light on the issues of scienter or Plaintiffs' reliance on the alleged misrepresentations.   Even if her deposition had been taken it would not have addressed the new stand alone Section 1-501 claims now asserted by Plaintiffs.   However, her deposition is or may be important now to show from a third party subscriber how she received and subscribed by means of the Offering Circular.

25.     Similarly, the deposition of Dr. Georgine DeMarino, a co-founder of the companies and an owner of Class A units therein, and who also was a manager of the companies, was not taken.   Her testimony would not have impacted on the issues of scienter or Plaintiffs' reliance.   Even if her deposition had been taken it would not have dealt with the new elements of Plaintiffs' new claims.   Now her testimony is important on the issues of causation (without reliance), the issue concerning "by means of" element, and the issue of innocent untrue statements or omissions.   In the context of Plaintiffs' new innocent misstatement theory under a stand alone section 1-501 cause of action, she needs or may need to be examined on the reasonableness behind the statements in the private Offering Circular, her review of the Circular as well as the identity of the seller from a Section 12(2) perspective.

{J1205750.1}

26.    The new claims also implicate the issue of who is responsible as a seller for a Section 12(2) cause of action.  The courts are reluctant to impose strict liability on professionals and others who are not the traditional sellers of the security and who did not receive the consideration paid for the security.  See, e.g., *Sellin v. Rx Plus, Inc.*, 730 F.Supp. 1289 (S.D.N.Y. 1990); *Daniels v. Blount Parrish & Co., Inc.*, 308 F. Supp. 2d 886 (N.D. Ill. 2004); *Friedman v. Arizona World Nurseries Limited Partnership*, 730 F. Supp. 521 (S.D.N.Y. 1990).  *See also Pinter v. Dahl*, 486 U.S. 622 (1988); *Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011 (2d Cir. 1989); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870-871 (5th Cir. 2003).  This is logical for a rescission claim under Section 12(2) based on innocent untrue statements or omissions.  The rescission remedy under Section 12(2) where rescission of the securities transaction occurs for innocent untrue statements or omissions without scienter or reliance—and, at the most, made negligently—makes no sense as applied to professionals or others such as Mr. Hergert who are not traditional sellers.  Common sense requires that a rescission claim should apply to the actual seller who received the consideration and to whom tender was made.  Mr. Hergert, however, was not the actual seller of either Note.  The August 16 Note was sold by Geramita to Gilliland.  The December 17 Note was sold by Main Medical Holding to Southeastern Imaging.  Significantly, what constitutes a seller for the Plaintiffs' new claim appears to be a question that has not yet been decided by the Supreme Court of Pennsylvania.  The determination of what constitutes a seller with respect to the new claims on a Section 12(2) theory is a matter that must be analyzed, evaluated, and explored by Mr.

{J1205750.1}

Hergert's counsel and experts (and may be the subject of additional discovery) and perhaps presented to the Court for summary judgment or similar scrutiny prior to trial.

27.    There also is a serious issue whether causation under Section 12(2) means that the untrue statement or omission must be shown to have caused the loss of value of the Notes.  This issue must be researched and analyzed.  It obviously expands greatly the scope of relevant information and likely must be explored at new and reopened depositions and with Defendant's experts and, again, perhaps presented to the Court for pretrial scrutiny.

28.    The new claim also would seem to require an element of tender of the Notes which is explicitly provided in Section 12(2) and Section 1-501.  As noted, the remedy for a violation is rescission, and not damages.  Neither Plaintiff tendered the Notes.  This issue likewise needs to be explored at new and reopened depositions and with Defendant's experts and possibly with pretrial dispositive motions to the Court.

29.    The new claims implicate the statute of limitations.  Plaintiffs' Second Amended Complaint (the operative Complaint) bristles with allegations (which Mr. Hergert denies) of fraud and intentional misconduct on the part of Mr. Hergert..  Indeed, Plaintiffs' still are asserting a fraud claim under sections 1-401/1-501 which this Court has confirmed requires proof of scienter and reliance and loss causation.  It is hard to understand how the brand new claims for securities violations (under the new Section 1-501 "stand alone" cause of action) for innocent misstatements could relate back to these counts for statute of limitations purposes.  Clearly, Plaintiffs' belated assertion of their purported stand alone Section 1-501 claims is an effort on their part to avoid proof of scienter and reliance on which Plaintiffs knew, or should have known, that they had

{J1205750.1}

very serious evidentiary problems. These matters, which raise potentially dispositive defenses to Plaintiffs' new claims, now need to be pursued and addressed.

30. Plaintiffs' new claims also raise serious issues with respect to secondary liability under section 1-503 with respect to those stand alone section 1-501 claims. When a security transaction is rescinded, it is not logical or sensible to make some person who is affiliated with the seller liable for innocent, untrue tatements or omissions of that third party. While Plaintiffs previously raised secondary liability in the 2007 summary judgment filings (it is not pleaded in the counts on security violations except 1-503 is noted in two caption titles in the Second Amended Complaint), the new claim of stand alone section 1-501 liability had not yet been raised at that time. The statutory securities act scheme is confusing and difficult but it would be an unreasonable and perhaps a constitutionally impermissible reading to make some person other than the actual seller liable for rescission for innocent, untrue statements since no one but the seller received the consideration for the security sold. The concept of aiding and abetting is a non-sequitur especially since Plaintiffs now claim that Mr. Geramita can be liable when making innocent (non-negligent) but untrue statements or omissions of material fact and Mr. Hergert can be secondarily liable with respect thereto. This is another issue that apparently has not yet been decided by the Pennsylvania Supreme Court. Mr. Hergert, and indeed this Court, needs adequate time to consider and pursue this significant issue. Importantly, if liability on the new rescission claims under section 1-501 is limited to the equivalent of the actual seller without any secondary liability, Plaintiffs' new stand alone section 1-501 claims against Mr. Hergert would be subject to dismissal as a matter of law.

{J1205750.1}

31.     Plaintiffs' new theory of strict liability without scienter or reliance casts significant doubt on Plaintiffs' claim for unlawful concerted action with respect to those new claims. It makes no sense for such a claim to relate to alleged liability for innocent misstatements without a showing of scienter or reliance. The concerted action must be intentional and one of the parties must commit an intentional tort. It is illogical to suggest a conspiracy to make an innocent or negligent misstatement. This issue likewise needs to be analyzed and fully developed before trial.

32.     These new claims by Plaintiffs, which were not in the case at any prior time and which could not have existed under the law of the case established by the November 15, 2007 Memorandum, should be treated like all other newly asserted and/or amended causes of action. Mr. Hergert should be provided with full and reasonable opportunity to fully develop his defenses, both factually and legally, to such new claims. Among other things, Mr. Hergert should be given an opportunity, with regard to these new causes of action, to take discovery, to make a motion to dismiss for failure to state a claim against Hergert and/or to seek summary judgment. Plaintiffs' dilatory conduct in not seeking timely reconsideration of the November 15, 2007 Memorandum and instead seeking reconsideration (and, as a practical matter, the amendment of its Second Amended Complaint to add new claims) on the eve of trial should not be allowed to short-circuit the litigation process, the Federal Rules of Civil Procedure, or fundamental fairness and due process considerations with respect to Mr. Hergert.

33.     Further, some decisions by the Court on other motions in limine need or may need to be revisited or other motions may need to be made by Mr. Hergert as a

{J1205750.1}

result of the July 1, 2008 Memorandum. For example, the Court recently ruled that Mr. Gilliland's failure to infuse capital into the company as planned was not relevant to a 10b-5 claim, but it is clearly relevant to Plaintiffs' new Section 1-501 claim on the issue of causation and whether any innocent untrue statements or omissions caused the loss of value of the Notes.

34. Mr. Hergert notes that he has been forced by the circumstances to make this Motion on the basis of preliminary research since the July 1, 2008 Memorandum changing the law of the case was just issued last week and trial is scheduled to commence in less that two weeks. Mr. Hergert intends during the requested postponement to pursue further research, consultation with experts, and (if permitted by the Court) discovery and pretrial dispositive motions on Plaintiffs' new stand alone section 1-501 claims so that there can be a fair trial of the new section 1-501 claims assuming the new claims survive pretrial scrutiny. As indicated above, the resulting delay of the trial and the consequences thereof was created by Plaintiffs' failing to file a prompt and timely motion for reconsideration regarding this Court's November 15, 2007 Memorandum. All the steps referred to above could have been taken by Plaintiffs for example, in the first calendar quarter of this year without requiring a postponement of the trial. Mr. Hergert should not be prejudiced by Plaintiffs' delaying tactics.

35. There cannot be a fair trial without giving Mr. Hergert reasonable time and opportunity to develop his defenses factually and legally to the new claim. Under the previously cited Third Circuit authority, the trial must be continued to afford Mr. Hergert an opportunity for a fair trial.

{J1205750.1}

36.     Granting of the requested relief will have the additional benefit to all concerned of an orderly pretrial and trial process on the new additional stand alone section 1-501 issues in question which should expedite the ultimate trial and enhance the fairness of, and minimize the likelihood of errors in, the trial.

37.     Defendant Hergert requests an expedited oral argument and/or status conference on this Motion and his accompanying Appeal Certification Motion.

WHEREFORE, Defendant Hergert respectfully requests that this Court enter an Order granting an approximately 120-day continuance of the currently scheduled July 21, 2008 trial commencement date without prejudice to Mr. Hergert's defenses and right to seek an opening of discovery and other pretrial proceedings on Plaintiffs' new stand alone claims under 70 P.S. §1-501.  A proposed Order is attached..

Respectfully submitted,

MANION MCDONOUGH & LUCAS, PC

/s/ Kevin P. Lucas
Kevin P. Lucas, Esq.
Pa. I.D. No. 42175
klucas@mmlpc.com
Alexandra P. West
Pa. I.D. No. 84903
awest@mmlpc.com
Manion McDonough & Lucas, P.C.
600 Grant Street, Suite 1414
Pittsburgh, PA 15219
(412) 232-0200

ECKERT SEAMANS CHERIN & MELLOTT, LLC
/s/ William B. Mallin

William B. Mallin, Esq.
Pa. I.D. No. 00802
wmallin@eckertseamans.com
John R. Kenrick, Esq.

{J1205750.1}

Pa. I.D. No. 00718
jkenrick@eckertseamans.com
Megan E. Ford, Esq.
Pa. I.D. No. 86503
mford@eckertseamans.com
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Attorneys for Defendant Jonathan K. Hergert

July 9, 2008

{J1205750.1}

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served on the 9th day of

July, 2008 by e-mail and first-class mail, postage prepaid, upon the following counsel of

record:

David J. Berardinelli, Esquire
Gary L. Kaplan, Esquire
DeForest Koscelnik Yokitis Kaplan & Berardinelli
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA 15219-1831
berardinelli @dkyk.com
kaplan@dkyk.com

Jon C. Sirlin, Esquire
Sirlin Gallogly & Lesser
1529 Walnut Street, Suite 600
Philadelphia, PA 19102
jsirlin@sirlinlaw.com

/s/ Kevin P. Lucas

{J1205750.1}